UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
_____
                            )
                            )
In re MICRON TECHNOLOGY, INC. )    Case No. 09-mc-00609 (GK)
SECURITIES LITIGATION        )
                            )
                            )
                            )
_____)
```

<u>MEMORANDUM OPINION</u>

Plaintiffs International Union of Operating Engineers, Local 132 Pension Plan, and Chemical Valley Pension Fund of West Virginia bring this Motion to Compel under Federal Rule of Civil Procedure 45(c)(2)(B)(i) against the United States Department of Justice ("DOJ" or "Government") and Attorney General Eric J. Holder, Jr. Plaintiffs seek the production of documents responsive to two subpoenas <u>duces tecum</u> issued on September 2, 2009 and September 4, 2009 in the underlying federal securities fraud action, <u>In re Micron Technology, Inc. Securities Litigation</u>, No. CV-06-085-BLW, filed in the District of Idaho. Upon consideration of the Motion, Opposition, Reply, and the entire record herein, and for the reasons set forth below, the Motion to Compel is **denied.**

## I. Procedural Background

The present Motion to Compel arises out of a pending federal securities class action in the District Court for the District of Idaho against Micron Technology, Inc. and three of its senior officers ("Idaho litigation"). The defendants in that action are

alleged to have engaged in a massive price-fixing conspiracy between 1999 and 2002 which involved the issuance of false and misleading statements to Micron's investors. Mot. to Compel at 2. In October 2002, Micron entered into a leniency program with DOJ's Antitrust Division, which had been investigating the price-fixing conspiracy for some time. Micron admitted to a criminal violation of the Sherman Antitrust Act and agreed to cooperate with the investigation in exchange for amnesty from prosecution. The three senior Micron officers named as defendants in the Idaho litigation accordingly testified under immunity about their involvement in the price-fixing scheme, and several other Micron employees were interviewed as well.

In the present Motion to Compel, Plaintiffs seek all records of interviews of Micron employees in connection with the DOJ's investigation for use in the Idaho litigation. Id. at 9. Plaintiffs first attempted to secure the production of these records from the defendants in the Idaho litigation, but have come to understand that they do not have copies of the records in their possession. Id. at 7. Next, Plaintiffs contacted counsel for Gary Swanson, an executive of Hynix Semiconductor who was indicted in the Northern District of California on related charges of price-fixing in 2008, because the DOJ had released all of the records in question to Mr. Swanson's counsel during his trial. However, Mr. Swanson's counsel informed Plaintiffs that the copies

of the records he had received were subject to a protective order, and that he had returned all copies to the DOJ.  Plaintiffs finally issued two subpoenas duces tecum--one to the Office of Legal Counsel, DOJ and one to the Attorney General--to obtain the records of interviews on September 2, 2009 and September 4, 2009.

On November 6, 2009, Assistant Attorney General Christine Varney informed Plaintiffs' counsel that the DOJ would not authorize production of the requested documents, citing the Department's Touhy regulations, 28 C.F.R. §§ 16.21-.29.  In light of the approaching deadline for discovery in the Idaho litigation, Plaintiffs filed the present Motion to Compel in this Court pursuant to Fed. R. Civ. P. 45(c)(2)(B)(i).

On January 6, 2010, the Court informed the parties that, due to its busy schedule, it would be able to issue a decision but not a memorandum order before the close of discovery in the Idaho litigation on January 22, 2010.  The Court denied the Motion to Compel by minute order dated January 14, 2010.  In response to Plaintiffs' request that the Court issue a Memorandum Order setting forth the basis for the January 14, 2010 Minute Order, the Court gave notice on January 26, 2010 that it would issue this Memorandum Order.  Order (Jan. 26, 2010) [Dkt. No. 15].

## II.  Standard of Review

Fed. R. .Civ. P. 45 governs the issuance of subpoenas and, relatedly, motions to compel.  Fed. R. Civ. P. 45 (2010).  This is

true even when the object of the subpoena is a federal agency. Watts v. Sec. Exchange Comm., 482 F.3d 501, 508 (D.C. Cir. 2007) (explaining that "a challenge to an agency's refusal to comply with a Rule 45 subpoena should proceed and be treated not as an APA action but as a Rule 45 motion to compel").

Rule 45(c)(2)(B)(i) provides that a person commanded to produce documents may object to the subpoena, but that the serving party may then move the Court for an order compelling production. When a motion to compel is filed, Fed. R. Civ. P. 45 "requires that district courts quash subpoenas that call for privileged matter or would cause an undue burden." Watts, 482 F.3d at 509.  The burden lies on the party resisting discovery to show that the documents requested are either unduly burdensome or privileged.  See Alexander v. Fed. Bureau of Investigation, 192 F.R.D. 42, 46 (D.D.C. 2000).

## III.  Analysis

The DOJ first argues that production of the records sought by Plaintiffs would be unduly burdensome, both because Plaintiffs' request is duplicative and cumulative and because production would place a considerable burden on the agency.  The DOJ next argues that the records are subject to the federal law enforcement privilege.[1]

---

[1]    The DOJ also argues that the records contain attorney work-product, and so are subject to the attorney work-product
(continued...)

**A.  Plaintiffs' Request Is Unduly Burdensome**

The  DOJ  objects  to  the  subpoenas  on  the  grounds  that production of the interview memoranda would be unduly burdensome. The "undue burden" test requires district courts to be "generally sensitive" to the costs imposed on third parties by subpoenas <u>duces tecum</u>.  <u>Watts</u>, 482 F.3d at 509.  Fed. R. Civ. P. 26(b)(2)(C) further  requires  the  court  to  limit  discovery  where  "(i)  the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues."  Fed. R. Civ. P. 26(b)(2)(C) (2010).

The Government argues that Plaintiffs "already have in their possession the exact information they seek to obtain from the interview memoranda," namely that Micron, as well as defendants Sadler  and  Appleton,  have  admitted  to  criminal  violations  of

---

[1](...continued)
privilege.  Because  this  Court  agrees  that  the  federal  law enforcement  privilege  applies  to  the  materials  sought  by Plaintiffs,  the  question  of  whether  the  attorney  work-product privilege applies as well is not reached.

antitrust laws. Opp'n at 16, 21. Yet, in the very same brief, the Government also argues that the materials Plaintiffs seek are confidential precisely because only a very narrow portion of them have been released or disclosed. Id. at 9 ("[T]here is a substantial amount of information contained in the Micron interview memoranda which has not been publicly disclosed."). In fact, Plaintiffs have attempted--and failed--to obtain the complete records of interviews through discovery of other parties.

While it might be true that what information is currently available to Plaintiffs establishes the basic fact that Micron admitted to criminal antitrust law violations, it is not for the Government to limit Plaintiffs' case in this way. Indeed, as Plaintiffs point out, one of the central reasons they seek the records of interviews is to support their claim of scienter and claims for damages. Reply at 1. Thus, the information sought is not entirely cumulative or duplicative, and is of central importance to Plaintiffs' case.

However, the DOJ also argues that Plaintiffs could simply depose the individuals interviewed by the Antitrust Division. Plaintiffs do not disagree, although they contend that Micron employees "are unlikely to be as forthcoming" with their own counsel as they were when interviewed by the DOJ. Mot. to Compel at 12. Further, the DOJ interviews were taken more than six years ago, and witnesses' memories have likely faded. Given these

-6-

circumstances, the Court is not convinced that Plaintiffs could obtain the same information by deposing those witnesses whose identities are known.

The remaining question, then, is whether the burden placed on the DOJ in producing these documents outweighs their value. Because the documents have been identified, as the Government concedes, there is no burden involved in searching for them. Instead, the Government argues that a substantial burden would result from a "threat to the integrity of the leniency program, and because the government would become a de facto party to the plaintiffs' underlying litigation to protect against unwarranted disclosure."  Opp'n at 22.

As discussed further below, these are significant concerns that justify a finding of undue burden.  Still, even when the demand for subpoenaed material is unduly burdensome, the Court is authorized to impose reasonable conditions and restrictions with respect to the subpoenaed material's production.  Fed. Trade Comm. v. Invention Submission Corp., 965 F.2d 1086, 1090 (D.C. Cir. 1992).  Plaintiffs have given little guidance on what conditions or restrictions would be found acceptable, and the DOJ has indicated a general opposition to a protective order.  See Opp'n at 17-18. In any event, the Court's conclusion that the law enforcement privilege applies to the subpoenaed material defeats any interest

in finding reasonable conditions and restrictions for its
production.

**B.   The Federal Law Enforcement Privilege Applies**

The DOJ next asserts the federal law enforcement privilege, a
qualified privilege "designed to prevent disclosure of information
that would be contrary to the public interest in the effective
functioning of law enforcement." Tuite v. Henry, 181 F.R.D. 175,
176 (D.D.C. 1998).

In Tuite, the Court of Appeals listed ten factors to be
considered in determining whether the law enforcement privilege
favors maintaining the confidentiality of materials sought in
discovery.  These factors, which are not exhaustive, include: "(1)
the extent to which disclosure will thwart governmental processes
by discouraging citizens from giving the government information;
(2) the impact upon persons who have given information of having
their identities disclosed; (3) the degree to which governmental
self-evaluation and consequent program improvement will be chilled
by disclosure; (4) whether the information sought is factual data
or evaluative summary; (5) whether the party seeking discovery is
an actual or potential defendant in any criminal proceeding either
pending or reasonably likely to follow from the incident in
question; (6) whether the investigation has been completed; (7)
whether any interdepartmental disciplinary proceedings have arisen
or may arise from the investigation; (8) whether the plaintiff's

-8-

suit is nonfrivolous and brought in good faith; (9) whether the information sought is available through other discovery or from other sources; and (10) the importance of the information sought to the plaintiff's case." Id. at 177.

As has been discussed, factors eight (whether the plaintiff's suit is nonfrivolous and brought in good faith), nine (whether the information sought is available through other discovery or from other sources), and ten (the importance of the information sought to the plaintiff's case) weigh in favor of Plaintiffs. The information sought does not appear to be available through other discovery, but is important to Plaintiffs' case, which is nonfrivolous and brought in good faith. The remaining relevant factors,[2] however, weigh heavily in favor of recognizing the privilege here.

With regards to the first factor (the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information), it is readily apparent that a refusal to recognize the law enforcement privilege for information obtained through the DOJ Antitrust Division's leniency program would chill future informants from coming forward.

---

[2]     Neither Plaintiffs nor the DOJ relied on factors three (the degree to which governmental self-evaluation and consequent program improvement will be chilled by disclosure), five (whether the party seeking discovery is an actual or potential defendant in any criminal proceeding), or seven (whether any interdepartmental disciplinary proceedings have arisen or may arise from the investigation) in their briefs.

The Antitrust Division's investigations depend heavily on the willingness of insiders to voluntarily provide information. Such information is, of course, given in great part as a result of the DOJ's assurance of confidentiality. Decl. of Scott D. Hammond at ¶¶ 9-16 [Dkt. No. 9-3]. When confidential information is disclosed to criminal defendants at trial, it is virtually always through a protective order that--as Plaintiffs themselves are aware--prevents broad disclosure of the information. If insiders like the defendants in the Idaho litigation were put on notice that any information they give could be subpoenaed and used against them in a civil suit for damages, then the Antitrust Division's investigative capacity would surely suffer.

Although this conclusion alone might justify recognizing the privilege here, factors two (the impact on confidential informants), four (whether the information is factual or evaluative data), and six (whether the investigation is closed) also support application of the privilege. First, the identities of several Micron employees who cooperated with the Government were never disclosed, and other undisclosed information could "reveal personal background information, the identities of unindicted coconspirators and individuals only peripherally involved or completely uninvolved in the price-fixing conspiracy." Decl. of Niall E. Lynch ¶¶ 12-14 ("Lynch Decl.") [Dkt. No. 9-4]. Second, the records sought are not verbatim transcripts of interviews, which would be factual in

nature, but rather summaries of those interviews prepared by DOJ paralegals that could "reveal the investigators' interviewing techniques and evaluative process, as well as what the investigators found to be significant." Tuite, 181 F.R.D. at 180. Thus, factors two and four also weigh against disclosure. Finally, the DOJ's investigation has not concluded, as there is one indictment outstanding for a foreign national for his participation in the price-fixing conspiracy. Lynch Decl. ¶ 5.

The Court thus agrees with the DOJ that "the government's disclosure of its investigative memoranda will strongly damage the integrity of the Division's leniency program, current open investigations, and the ability to pursue investigations in the future." Opp'n at 17. Given the strong public interest in maintaining the confidentiality of the information sought by Plaintiffs, the law enforcement privilege applies.

Plaintiffs respond that the privilege has been waived because the DOJ released all material sought to Mr. Swanson's counsel in the course of his criminal trial. However, as the above discussion makes clear, the law enforcement privilege is subject to a fact-specific balancing test in each case. While the Tuit factors may call for disclosure in a criminal trial--if, somehow, the Jencks Act, 18 U.S.C. § 3500, did not already require disclosure--the same need not be true in a civil suit for damages. See, e.g., In re Sealed Case, 856 F.2d 268 (D.C. Cir. 1988) (for purposes of law

enforcement privilege, "[t]he public interest in nondisclosure must be balanced against the need of a <u>particular litigant</u> for access to the privileged information") (emphasis added); <u>Bigelow v. District of Columbia</u>, 122 F.R.D. 111, 114-15 (D.D.C. 1998) (recognizing that government's disclosure of information under protective order to private party in civil suit did not waive law enforcement privilege with respect to intervenor because "[t]he fact that the Government sought to protect the public's interest in nondisclosure, but, nonetheless, recognized the plaintiffs [sic] need for this information and voluntarily agreed to disclosure . . . should not inure to the detriment of the Government"). Thus, the Court concludes that the DOJ has not waived the federal law enforcement privilege.

## IV.   CONCLUSION

For the reasons set forth above, Plaintiffs' Motion to Compel is **denied.**


February 1, 2010
                              /s/_____
                              Gladys Kessler
                              United States District Judge


<u>Copies to</u>: attorneys on record via ECF